## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | **CR-94-82-BLG-BMM** |
| Plaintiff, | |
| vs. | **ORDER** |
| DEAN LAFROMBOISE, | |
| Defendant. | |

### INTRODUCTION

Dean LaFromboise filed an amended motion pursuant to 28 U.S.C. § 2255 on April 15, 2021, to vacate, set aside, or correct the sentence that was imposed by the Court in 1995 following a jury trial. (Doc. 896.) The Court directed the parties to complete discovery on or before January 20, 2023, and to file motions for summary judgment on or before March 3, 2023. (Doc. 917.) The Government moves the Court for summary judgment on the grounds that LaFromboise's motion is untimely, his claims are procedurally defaulted, and his *Brady/Giglio* claims do not meet Brady's requirements to prove a constitutional violation. (Doc. 919.) The motion has been fully briefed. The Court did not hold a hearing on the Government's motion. For the reasons outlined below, the Court grants the Government's motion for summary judgment.

1

## PROCEDURAL HISTORY

A jury convicted Dean LaFromboise and codefendant Michael Cozzens on May 2, 1995. The Court sentenced LaFromboise to 720 months custody by District Judge Jack Shanstrom. Edward Sheehy represented LaFromboise at trial and Lynn Hamilton represented him on direct appeal. The Ninth Circuit affirmed LaFromboise's conviction and sentence as to the drug counts, but reversed on three firearms counts due to a change in the interpretation of the firearms offenses. (Doc. 616, *United States v. Ehrlich*, No. 95-30258, 1997 WL 14426, at *7 (9th Cir. Jan. 10, 1997).) The Court granted the Government's motion to dismiss the three firearms counts on remand, but the Court failed to enter an amended judgment.

LaFromboise filed his first § 2255 motion on June 28, 1999, claiming ineffective assistance of counsel, prosecutorial misconduct, misjoinder of charges, and improper application of the sentencing guidelines. The Ninth Circuit deemed this motion as premature because the Court had not entered an amended judgment. *United States v. LaFromboise*, 427 F.3d 680 (9th Cir. 2005). The Court resentenced LaFromboise on remand to 420 months, and the Ninth Circuit affirmed the resentencing on October 23, 2007. (Doc. 682, *United States v. LaFromboise*, No. 60-30552.)

LaFromboise filed his first § 2255 motion challenging his amended sentence on January 18, 2008. (Doc. 684.) Finding the motion to be without merit, the Court

denied a certificate of appealability. (Docs. 707 & 714.) The Ninth Circuit also denied a certificate of appealability. (Doc. 734.) In 2013, LaFromboise filed a notice of appeal from this Court's decision to deny discovery and requested that the Ninth Circuit withdraw its mandate. The Ninth Circuit dismissed that appeal in July 2013. (Doc. 761.) LaFromboise filed another notice of appeal in August 2013, which the Ninth Circuit dismissed, and in December 2013 the Ninth Circuit dismissed a motion for reconsideration. (Docs. 766 & 780.)

LaFromboise filed three motions for reconsideration and a motion to appoint counsel in 2014. (Docs. 781-786.) The Court denied LaFromboise's motions and denied a certificate of appealability. The Ninth Circuit also denied a certificate of appealability. (Docs. 787, 788, 798 (No. 14-35978).)

LaFromboise filed a motion for sentence reduction in 2015 pursuant to U.S.S.G. Amendment 782, which the Court granted. The Court reduced LaFromboise's sentence by 73 months, to a total of 347 months. (Doc. 809.) Dissatisfied with this reduction, LaFromboise filed a notice of appeal. The Court granted an extension to permit his direct appeal to go forward. (Doc. 816.) LaFromboise wrote letters in 2015 and 2016 to obtain appointment of counsel to aid in his appeal of his amended sentence to both the Court and the Ninth Circuit. The Court appointed new counsel: David Merchant. Merchant filed a brief and excerpts of record in August 2016, (No. 15-30268, Doc. 17-18.) LaFromboise then filed a

motion to proceed *pro se*, requesting that the Ninth Circuit permit his counsel, Mr. Merchant, to withdraw. (*United States v. LaFromboise*, No. 15-30268, Doc. 25, filed on September 23, 2016.) The Ninth Circuit struck Merchant's brief on October 20, 2016, granted counsel's motion to withdraw, granted LaFromboise's motion to proceed *pro se* on appeal, and set a new briefing schedule. (No. 15-30268, Doc. 33.) LaFromboise then filed his *pro* se Opening Brief on December 12, 2016, and his *pro se* Reply Brief on January 23, 2017. (No. 15-30268, Doc. 35, 39.) The Ninth Circuit affirmed the District Court's reduction in sentence on March 14, 2017. (No. 15-30268, Doc. 40; Doc. 826.)

Relevant to the instant proceeding, on March 1, 2018, one year following LaFromboise's unsuccessful sentencing reduction appeal, the Court received a document from LaFromboise dated February 25, 2018. LaFromboise captioned the document as "Plain-Error Review Fed. R. Crim. P. 52(b)." (Doc. 828.) In this document, LaFromboise explains that he had received two letters from the U.S. Attorney for the District of Montana dated February 11 and February 23, 2016. LaFromboise stated that in response to these letters he had requested "all offers, immunity agreements, and Rule 35 motions" as to all of the prosecution witnesses, but had received nothing in return. (Doc. 831 at 3-4.) LaFromboise did not file a motion relating to his original conviction and sentence in this Court during the 734 days (approximately 24 months or 2 years) between the last letter received from the

U.S. Attorney for the District of Montana in 2016 and LaFromboise's filing of the Motion for Plain-Error Review on February 25, 2018. The Court recognized that the Motion for Plain-Error Review was a second or successive § 2255 motion and transferred the motion to the Ninth Circuit for authorization. (Doc. 829.)

On August 28, 2018, the Ninth Circuit authorized the motion to be filed as a second or successive § 2255 motion as of the motion's date, February 25, 2018. (Doc. 831-2.) The Ninth Circuit specifically granted its certificate of appealability as to LaFromboise's claim that the prosecutor had withheld impeachment evidence because it "make[s] a prima facie showing as to the applicant's proposed claim under *Giglio v. United States*, 405 U.S. 150 (1972)." (Doc. 831-2.) The Circuit order also stated, "[w]e express no opinion as to the merits of the applicant's claims *or whether the procedural requirement of 28 U.S.C. § 2255(f) is satisfied*." (Doc. 831-2, emphasis added.)

LaFromboise filed a pro se motion seeking early release to home confinement under 18 U.S.C. § 3582(c)(1)(A)(i) on April 13, 2020. (Doc. 875.) The Court denied LaFromboise's motion, and denied it again upon reconsideration. (Docs. 877 & 881.) LaFromboise filed a notice of appeal of the Court's decision to deny his compassionate release request. (Doc. 883.) The Ninth Circuit vacated the Court's orders and remanded the case with instructions to dismiss LaFromboise's motion without prejudice because LaFromboise had failed to exhaust his administrative

remedies by requesting relief from the Bureau of Prisons before filing his motion in District Court. (Doc. 903.)

Habeas counsel filed an Amended Motion to Vacate, Set Aside, or Correct Sentence on April 15, 2021. Habeas counsel acknowledged that the filing constituted LaFromboise's second § 2255 motion. (Doc. 896 at 2.) LaFromboise alleges that the prosecutor who tried his case to a jury in 1995 did not provide discovery to defense counsel as required by *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972).

The Court ruled on LaFromboise's pending second motion on April 20, 2022. (Doc. 910.) The Court determined that LaFromboise's was entitled to equitable tolling and his motion was not untimely. (*Id*.) The Court filed a new scheduling order, setting deadlines for discovery and summary judgment motions. (Doc. 913.) In response to the Court's scheduling order, the Government now moves the Court for summary judgment on the grounds that LaFromboise's motion is untimely, his claims are procedurally defaulted, and his *Brady/Giglio* claims do not meet Brady's requirements to prove a constitutional violation. (Doc. 919.)

## FACTUAL BACKGROUND

Following a jury trial in 1995, LaFromboise was convicted of federal drug crimes and sentenced to serve 420 months in prison. *See* Judgment (Doc. 647 at 3–4.) On August 3, 2015, pursuant to Amendments 782 and 788 to the United States

Sentencing Guidelines, his sentence was reduced to 347 months. *See* Am. Judgment (Doc. 809 at 1.) He is currently serving a five-year term of supervised release.

In a letter dated February 11, 2016, then-United States Attorney Michael W. Cotter alerted LaFromboise to the possibility that the prosecution, James Seykora, had withheld information in his case. *See* Cotter Letter (Doc. 831-1 at 11–12.) A revised letter went out on February 23, 2016. *See* Revised Cotter Letter (Doc. 831-1 at 13–14) (including four lines at top of page two that were omitted from original letter). Each letter invited those to whom it was sent to identify information they believed Seykora might have withheld. (*Id.*)

In response, LaFromboise wrote a detailed, nine- page letter, dated February 23, 2016. He requested "any and all records, notes, and offers given for a reduction in [cooperating witnesses'] sentences or charges dismissed," *see* LaFromboise Letter (Doc. 828-1 at 1), "any and all documents, deals, offers, and promises made," (*id*. at 7), and, in conclusion, "any and all deals cut" with a total of 15 witnesses. (*Id*. at 9.)

The United States asserts that this exchange of letters shows that, at the latest, LaFromboise could have filed a § 2255 motion (or an application for leave to file such a motion) within a year of the date he received the Cotter Letter. The United States reports that it found no trace of LaFromboise's letter in its own files and questions whether he mailed it. *See* U.S. Br. (Doc. 892) at 14. For present purposes, it does not matter whether the United States received the letter. LaFromboise's letter

7

in response proves he was aware of the Cotter Letter by February 23, 2016. The United States argues that LaFromboise should have filed a § 2255 motion on or before February 24, 2017. *See* (Doc. 899 at 11–12.) LaFromboise filed on February 25, 2018.

## LEGAL STANDARD

Summary judgment is appropriate where "the movant shows there is no genuine dispute as to any material fact and the movant is entitled as a matter of law." *Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Material facts are those which might affect the outcome of the suit under governing law. *Id.* at 248. In ruling on summary judgment, the court does not weigh the evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (citing *Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992)).

"If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). "When evidence is controverted, assertions become colorable for purposes of summary judgment law." *Id.* at 264 n.3 (J. Brennan, dissenting). If the evidence in favor of the nonmoving party is merely colorable, *i.e.,* is merely a controverting allegation by the nonmoving party, then summary judgment may be granted. *See id.*

at 250.  In other words, if there is no other evidence to support a "merely colorable" controverting allegation made by the nonmoving party—no evidence sufficient for a judge to return a verdict for the nonmoving party—then summary judgment may be granted.  *Id.* at 249-50.

Merely conclusory allegations alone will not justify a hearing.  *United States v. Hearst*, 638 F.2d 1190, 1194 (9th Cir. 1980).  Conclusory allegations must be substantiated before they require a hearing.  *United States v. Finze*, 428 Fed.App'x. 672, 675 (9th Cir. 2011) (citing *United States v. Johnson*, 988 F.2d 941, 945 (9th Cir. 1993)).  The law requires objective evidence apart from the "movant's own self-serving testimony."  *Blake v. United States*, 723 F.3d 870, 887 (7th Cir. 2013).  Hindsight statements "through signed reports from people who presumably wish to help him, do not comprise objective evidence."  *United States v. Gadson*, 2018 WL 9786101 (D. Alaska Sept. 18, 2018).

No hearing is required when a credibility dispute arises if "the issue of credibility can be conclusively decided on the basis of documentary testimony and evidence in the record."  *Shah v. United States*, 878 F.2d 1156, 1158 (9th Cir. 1989).  No hearing is required for allegations that are "palpably incredible" or "patently frivolous" when viewed against the record.  *United States v. Burrows*, 872 F.2d 915, 917 (9th Cir. 1989).  "Section 2255 requires only that the district court give a claim careful consideration and plenary processing, including full opportunity for

presentation of the relevant facts." *Shah*, 878 F.2d at 1159. The moving party bears the initial burden of showing the absence of a genuine issue of material fact for trial, but it need not disprove the other party's case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-35 (1986).

A *Brady* claim asserts that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Material evidence gives rise to "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Strickler v. Greene*, 527 U.S. 263, 280 (1999) (citing *United States v. Bagley*, 473 U.S. 667, 676 (1985)). A *Brady* claim contains three components: (1) the evidence must be favorable to the accused; (2) that evidence must have been suppressed; and (3) prejudice ensued. *Strickler*, 527 U.S. at 281-82. LaFromboise has the burden of establishing a *Brady* violation; he cannot rest on mere speculation or conclusory allegations. *Parke v. Raley*, 506 U.S. 20, 31 (1992).

LaFromboise bears the burden of proving that there was a need for disclosure. *See United States v. Sai Keung* Wong, 886 F.2d 252, 256 (9th Cir. 1989) ("The mere suspicion that information will prove helpful is insufficient to require disclosure."). LaFromboise bears the burden of proving that withheld evidence is material. *United States v. Si*, 343 F.3d 116, 1122 (9th Cir. 2002). "[T]here is never a real '*Brady*

violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." *Strickler v. Greene*, 527 U.S. 263, 281 (1999).  Therefore, the Government can meet its summary judgment burden simply by pointing out that LaFromboise has failed to support his *Brady* claims and failed to present any genuine issue of material fact. *See Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990); *Anderson*, 477 U.S. at 248.

## DISCUSSION

### I.    Timeliness

The Government argues that LaFromboise's motion is untimely and no ground for equitable tolling applies. (Doc. 923 at 26.) The Court previously determined that LaFromboise is entitled to equitable tolling. *See* Order (Doc. 910.)

To obtain equitable tolling, a movant must show "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Smith v. Davis*, 953 F.3d 582, 588 (9th Cir. 2020) (en banc) (quoting *Holland*, 560 U.S. at 649). A movant must be reasonably diligent not only while the extraordinary circumstance prevents him from filing "but before and after as well, up to the time of filing his claim in federal court." *Id*. at 599. "[O]nly when an extraordinary circumstance prevented a petitioner acting with reasonable diligence from making a timely filing" does equitable tolling apply. *Id*.

at 600. Whether grounds exist for equitable tolling remains a highly fact-dependent inquiry. *Whalem/Hunt v. Early*, 233 F.3d 1146, 1148 (9th Cir. 2000).

The Government's expectation that defendants should identify what impeaching information was withheld fails to cure the *Giglio* violation. This expectation also seems to contradict the Cotter Letter, which specifically asked defendants to submit a "written request" for "relevant portions of our files" if the defendant believed that Seykora might have withheld *Giglio* material. (Doc. 831-1 at 12). The Cotter Letter specifically advised defendants that "[t]he mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish" a *Giglio* violation. (*Id.* at 11 (quoting *United States v. Agurs*, 427 U.S. 97, 109–10 (1976)). The U.S. Attorney created an extraordinary circumstance by specifically instructing LaFromboise that the appropriate next step would be to contact their office for further information, rather than filing a successive § 2255 motion directly. The Court agrees with LaFromboise that he could not have filed an adequate petition for relief without the assistance of counsel in identifying any potential *Giglio* violations.

The Ninth Circuit previously has determined that equitable tolling may be appropriate when a prisoner had been denied access to his legal files. *See Spitsyn v. Moore*, 345 F.3d 796, 801 (9th Cir. 2003), as amended (Nov. 3, 2003). Seykora's participation in LaFromboise's case may have been enough to "nudge their claims

across the line from conceivable to plausible," but the Cotter Letter lacked any information as to how Seykora's misconduct related to LaFromboise's case. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "It is 'unrealistic to expect [a habeas petitioner] to prepare and file a meaningful petition on his own within the limitations period' without access to his legal file*." Espinoza-Matthews v. California*, 432 F.3d 1021, 1027 (9th Cir. 2005) (quoting *Spitsyn*, 345 F.3d at 801). LaFromboise acted with reasonable diligence by attempting to secure information pertaining to Seykora's behavior in his case, as the Cotter Letter instructed him to do. He is entitled to equitable tolling.

## II.    Brady/Giglio Violations

The Government asserts that LaFromboise's *Brady/Giglio* claims do not meet *Brady*'s requirements for a constitutional violation. "Evidence favorable to the defendant must be disclosed when it is material to either guilt or to punishment." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Impeachment evidence is required to be disclosed pursuant to *Giglio v. United States*, 405 U.S. 150, 153-55 (1972). "In the post-trial context, a *Brady* violation has three components: (1) the information must be favorable to the defense; (2) it must not have been disclosed by the government before trial; and (3) there must have been resulting prejudice." *United States v. Mazzarella*, 784 F.3d 532, 538 (9th Cir. 2015) (citing *United States v. Wilkes*, 662 F.3d 524, 535 (9th Cir. 2011)). A *Brady* violation occurs when withheld

13

impeachment evidence proves material to the extent that "if disclosed and used effectively it [might have made] the difference between conviction and acquittal." *United States v. Bagley*, 473 U.S. 667, 676 (1985).

Prejudice results "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Kohring*, 637 F.3d 895, 902 (9th Cir. 2011). "A reasonable probability does not require showing by a preponderance that the outcome would have been different. Rather, a reasonable probability is a probability sufficient to undermine confidence in the outcome." *Carriger v. Stewart* 132 F.3d 463, 479 (9th Cir. 1997) (citation omitted).

On a second or successive § 2255 motion, however, the movant must show "by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense." 28 U.S.C. § 2255(h)(1). The prosecutor in this case did not violate LaFromboise's due process rights as set forth in *Brady* and *Giglio*. The errors alleged by defendant as to the testimony of Jesse Leal, Bud Chapel, and Don Allen do not rise to the level of a constitutional violation because they do not satisfy the three prongs of the *Brady* test.

### A. Jesse Leal

LaFromboise contends that there might be some information pertaining to co-defendant Jesse Leal that was not disclosed by Government counsel. Habeas counsel

for LaFromboise fails to provide information that the Government withheld information relating to Leal. LaFromboise instead relies upon a March 1995 letter between Leal's defense counsel and the Government. *See* (Doc. 879-3.) The letter fails to offer documentary evidence that should have been disclosed by the Government. The letter represents that defense counsel and the prosecutor had been engaging in verbal plea negotiations. The Government disclosed the agreement that resulted from those negotiations. (Doc. 923 at 41.) Prosecutors possess no duty to produce materials related to initial discussions between the prosecutor and cooperators' counsel. *See United States v. Acosta*, 357 F.Supp.2d 1228, 1244 (D. Nev. 2005). This letter provides no new evidence of any *Brady/Giglio* violation.

Leal's testimony against LaFromboise corroborated the testimony of numerous other witnesses. Leal saw LaFromboise use methamphetamine at the warehouse, saw him work on cars with Wells at the warehouse, and saw him possessing a 9mm pistol and SKS rifle with a wood stock. (Tr. 631:3-4; 632:7-11; 632:17-20; 633:4-10.) Leal testified that when he found out John Estrada was in town (presumably to collect a drug debt from Doug Ehrlich), Ehrlich told him to find LaFromboise or Wells to "help" defend the drug warehouse and co-conspirators from a potential attack by Estrada. (Tr. 635:9-15.) After Leal found LaFromboise, both Leal and LaFromboise went to the warehouse, and Leal carried a Tec-9 pistol and LaFromboise had his SKS rifle. (Tr.635:20-636:4.) They met Larry Bargar, Don

Allen, and Wayne Wells at the warehouse. (Tr.636:8-11.) Bargar had a shotgun and Wells had an SKS, but Allen did not have a firearm. (Tr. 636:14-21.)

The Court's record reflects no *Brady/Giglio* violation occurred with respect to co-defendant Leal. Examination of the trial transcript, the twenty-page discovery log (Doc. 879-4), and the government's case file fails to demonstrate that discoverable information pertaining to Leal that was not disclosed. The Government provided all discoverable information to LaFromboise's counsel before trial, and trial counsel Sheehy was able to ask Leal "whether [he] was biased [and] also to make a record why [he might] have been biased." *United States v. Larson*, 495 F.3d 1094, 1102 (9th Cir. 2007) (en banc) (quoting *Davis v. Alaska*, 415 U.S. 308, 318 (1974)). No undisclosed evidence has been shown that "could reasonably be taken to put the case in such a different light as to undermine confidence in the verdict." *Kyles v. Whitley*, 514 U.S. 419, 435 (1995).

### B. Bud Chapel

LaFromboise contends that there might be some information pertaining to Bud Chapel that Government counsel failed to disclose. Chapel, a resident of Billings, Montana, was purchasing methamphetamine from Gloria Frost beginning in February or March of 1994. (Tr. Tr. 1175:2-5.) Chapel admitted that he purchased methamphetamine from Gloria Frost in April or May 1994 and had failed to pay her for all he purchased during his brief trial testimony. (Tr. 1173:17-24.) Chapel stated

that LaFromboise and Wells came to Chapel's residence and confronted Chapel about his failure to pay Frost. (Tr. 1174: 7-20.) Chapel testified that LaFromboise hit him. (Tr. 1174:20.) Renzy Cerovski testified that he saw Chapel with a black eye after a drug debt collector had visited him in the Spring of 1994. (Tr. 816:21-817:16.)

Both Ehrlich and Steve Simmons (aka Ron Minson) (who obtained his meth from Ehrlich) testified that Gloria Frost was getting her methamphetamine from them. (Tr. 1167:15-17; 1161:10-15.) Wells testified that Gloria Frost was Minson's girlfriend, and she got her methamphetamine from "the warehouse," meaning Mison or Ehrlich. (Tr. 1051 at 1-2.) LaFromboise's trial counsel elicited testimony from Chapel that his wife Jacine had been shot and killed on September 31, 1994, while she was a passenger in a car driven by LaFromboise that was ambushed as the result of one of LaFromboise's drug deals gone bad. (Tr. 1176:19-21.)

LaFromboise now argues that the prosecutor may have deprived him of information pertinent to Chapel on the day he testified, which was April 28, 1995. (Tr. 1037.) LaFromboise has submitted an undated article from the Billings Gazette newspaper that habeas counsel believes was published after the trial, perhaps on May 4, 1995. (Doc. 897-7.) The article states that on April 26, 1995, Chapel was arrested following a routine traffic stop by a Montana Highway Patrol ("MHP") officer, on April 26, 1995. (Doc. 897-7.) The Montana officer found methamphetamine, guns,

and drug paraphernalia in the vehicle.  The article further states that Chapel was subsequently charged in Musselshell County with burglary, as some of the guns had been reported stolen there. The prosecutor began trying LaFromboise and Cozzen's case before the Court on April 26, 1995.

Habeas counsel fails to show that the prosecution team was aware of the stop. The Court determines insufficient grounds exist to establish that the prosecutor knew of the MHP traffic stop and connected it to Chapel. Chapel admitted to being a user of methamphetamine who did not pay his bills.  His brief testimony was directed solely to the fact that LaFromboise confronted Chapel about his drug debt owed to Gloria Frost and that LaFromboise hit him during that conversation.

Chapel's testimony was not the sole means by which the Government connected LaFromboise to the charged drug conspiracy. Chapel's testimony did not increase LaFromboise's drug quantity.  Ehrlich, the leader/organizer of the charged drug conspiracy, connected LaFromboise to the conspiracy when he testified that LaFromboise was purchasing distribution quantities of methamphetamine from him. (Tr. 417:11- 14.) LaFromboise was connected to the conspiracy when he was filmed at the warehouse with his SKS long gun on the night of October 21, 1995, while he was protecting the drug conspiracy from John Estrada.  (Tr. 847:22-856:24.) LaFromboise was connected to the conspiracy when Wells testified that LaFromboise told him he was taking methamphetamine to Great Falls to sell.  (Tr.

1058:5-16.) LaFromboise was connected to the conspiracy when Ehrlich testified that he sold LaFromboise at least three ounces of methamphetamine to redistribute and fronted LaFromboise four more ounces of methamphetamine to take to Great Falls to sell. (Tr. 452:17-20.) The testimony of numerous other witnesses connected LaFromboise to this drug conspiracy. The Chapel testimony merely pointed out that part of LaFromboise's skill set was a willingness to act as a debt collector and enforcer.

Furthermore, the only drugs used to set LaFromboise's base offense level were the packages of methamphetamine seized by the California Highway Patrol on October 30, 1994, shortly before LaFromboise's arrest and at a time when he clearly was part of the drug conspiracy (as affirmed by the Ninth Circuit in *United States v. LaFromboise*, 1997 WL 14426 (9th Cir. 1997). (Doc. 372-2, PSR ¶ 79.) No drug quantity from spring or summer of 1994 was used to set LaFromboise's offense level.

The Court determines that insufficient grounds exist to establish that the prosecutor was involved in Chapel's state charges, either in Yellowstone or in Musselshell County, or that this prosecutor knew of Chapel's recent arrest while the trial was in progress, or post-trial arrests by state law enforcement. This unsubstantiated allegation as to Chapel is not based on clear and convincing evidence such that, were it disclosed, no reasonable factfinder would have found

LaFromboise guilty.

### C. Don Allen

LaFromboise contends that there might be some information pertaining to co-defendant Don Allen that was not disclosed by Government counsel. Allen, a resident of Billings, Montana, was purchasing methamphetamine from Ehrlich after July 1994. (Tr. 873:17-20; 876:17-22.) Allen developed his own customers and sometimes delivered methamphetamine for Ehrlich. (Tr. 876:25-877:4; 878:9-17.) On two occasions Allen delivered two ounces of methamphetamine to Tiny, a 300-pound biker, and brought the money back to Ehrlich each time. (Tr. 904:17-25.) He saw Ehrlich weighing methamphetamine at the warehouse, and he saw both marijuana and cocaine at the warehouse. (Tr. 880:8-25.)

Allen met LaFromboise at Ehrlich's residence. (Tr. 882:4-5.) Allen watched as Ehrlich removed the stitches from LaFromboise's arm from his gunshot wound. (Tr. 883:15-884:13.) After LaFromboise left the residence, Ehrlich told Allen that "Dean [LaFromboise] did a little work for [Ehrlich]." (Tr. 888:13-17.) According to Allen's testimony, Ehrlich told Allen that LaFromboise "did a little wheeling and dealing for him and a little work for him." (Tr. 888:18-20.) Ehrlich also said that LaFromboise was "bad news." (Tr. 904:2-4.)

Allen also saw LaFromboise at Ehrlich's warehouse in October. (Tr. 903:15-24.) Allen saw LaFromboise again at the warehouse on the night of October 21,

1994. (Tr. 88:17-885:7.) Allen testified that the other people who met him at Ehrlich's warehouse that night were Ehrlich, Wells, LaFromboise, Bargar, and Leal, and "pretty much everybody" except Allen had firearms. (Tr. 885:12-18.) After meeting at the warehouse, Leal and Allen left for California, as was planned earlier. (Tr. 887:23-24.)

LaFromboise's trial counsel thoroughly cross-examined Allen about the charges against him in the Indictment, his plea agreement, and the truthfulness of his statements to law enforcement when he was arrested in California. (Tr. 889: 11-895:10.) Allen testified that Ehrlich asked him to accompany Leal on the California trip so he could help with the driving and Leal could buy a car for Ehrlich. (Tr. 906:3-5.) Allen testified that Leal dropped him off at a Motel 6 and left to go buy the car. Allen did not know that the car purchased by Jesse was packed with large quantities of controlled substances in hidden compartments. (Tr. 912:18-914; 916:13-15; 917:8-12.)

Allen testified that he was immediately released from the California jail, and that Ehrlich arrived to supply bail money to get Leal released from jail. (Tr. 920:3-17.) Ehrlich also asked Allen to drive the Corvette back to Montana with something extra on board, and Allen refused and instead flew to Salt Lake City and took a bus to Billings. (Tr. 923:1-8.) Allen acknowledged selling about 12 to 14 ounces of methamphetamine in total for Ehrlich and acknowledged his participation in the drug

conspiracy. (Tr. 15-18.) The Court sentenced Allen three weeks before trial to a term of 80 months imprisonment and 5 years of supervised release. The Court also sentenced Allen's wife Debbie (who also testified) to a term of 60 months imprisonment and 60 months of supervised release. (Doc. 372-2, LaFromboise PSR, ¶ 8.) The Government provided Don and Debbie Allen's plea agreements, grand jury transcripts, and agent debriefing notes to defense counsel before his testimony. (Exhibit D, Doc. 879-4, Items 219, 220, 255, 256, 316.)

Habeas counsel focuses on a one-page facsimile transmission dated January 17, 1995, from the Kern County District Attorney's Office in California, to the prosecutor in this case. The facsimile states that the Kern County prosecutor will move to dismiss its misdemeanor concealed carry complaint against Allen if Allen enters into a plea agreement with the federal Government. (Doc. 897-5.)

Habeas counsel argues that there is no evidence that trial counsel knew that California planned to dismiss its criminal prosecution of Allen if Allen entered into a plea agreement (or did dismiss before the LaFromboise trial, as the case may be). The Government admits that it is uncertain whether the facsimile transmission was produced to trial counsel as it ought to have been. The Government agrees that such information should have been disclosed to trial counsel, if it was not.

The Government's files indicate that two discovery disclosures were made to LaFromboise's trial counsel relating to Kern County. First, the Government received

a signed Disclosure of Evidence Receipt from trial counsel on March 9, 1995, that lists a one-page "Bakersfield, CA arrest warrant for Donald Allen and Dismissal of charges." (Doc. 899-1 at 5.) Second, the Government received a signed Disclosure of Evidence Receipt from trial counsel on April 9, 1995, that lists a 52-page document titled "Kern County Reports." (Doc. 899-2 at 2.)

Although the Government admits that it is uncertain whether the facsimile transmission was produced to LaFromboise's trial counsel as it ought to have been, the Government nonetheless asserts that the alleged non-disclosure proves inconsequential. The Government argues that LaFromboise's trial counsel was a very experienced criminal defense attorney and was informed by the discovery that the Kern County charge against Allen had been dismissed before trial.

Habeas counsel suggests that in having his California charge dropped, "Allen received benefits far beyond what was shown on cross-examination." (Doc. No. 897 at 31.) The Court determines these alleged benefits are not supported by the evidence in the record. Allen's violation of California's concealed carry law was a much less significant charge than the Montana drug conspiracy for which he was sentenced to a term of 80 months. The "benefit" of having a misdemeanor California charge dropped was merely that he was to be prosecuted by Montana, and the benefit ran mainly to Kern County, not to Allen. LaFromboise fails to show that the prosecutor promised Allen anything in return with respect to the Kern County charge.

Trial counsel cross-examined Allen thoroughly on whether his testimony was influenced by a desire to please the government to obtain a sentence reduction. (Tr. 892:20-895:10.) Impeaching Allen on the California misdemeanor dismissal would have been duplicative and would have added no more than an incremental amount of grist for that mill. Certainly, had trial counsel cross-examined Allen about his California charge being dropped in favor of the Montana prosecution, Allen would have given the same reply as before—that he was required to tell the truth pursuant to his plea agreement, and he was doing so to get a reduced sentence. (Tr. 895:1-5.) As Allen testified: "[A]ccording to the terms of that plea agreement, I have to tell the truth. I can't—you know, why would I risk my six years, seven-year sentence to lie about it afterwards? I just don't see why I would do that." (Tr. 895:1-5.) He said, "I'm just telling it like it is. I'm just telling the truth. That's all I can do." (Tr. 895:12-13.)

The Court finds that the alleged failure to disclose the facsimile transmission dated January 17, 1995, and the assertion that somehow this information would have some impact on the jury's verdict, presents a marginal discovery failure that does not rise to a constitutional violation because it is not material to LaFromboise's guilt or sentence. LaFromboise fails to provide the Court clear and convincing evidence such that, were the dropped California charges against Allen disclosed, no reasonable factfinder would have found LaFromboise guilty.

## CONCLUSION

LaFromboise's second § 2255 motion is not untimely, yet it fails to show a constitutional violation. Review of the record demonstrates that the jury's verdict is sound. No genuine issues of material fact remain in dispute. LaFromboise has failed to prove that any material or prejudicial discovery violations occurred. LaFromboise cannot meet the high burden he carries on a second or successive § 2255 motion. *See* 28 U.S.C. § 2255(h)(1). LaFromboise failed to produce newly discovered evidence to show by a clear and convincing standard that no reasonable factfinder would have found him guilty of the offense. *See id*.

## ORDER

Accordingly, **IT IS ORDERED**:

The Government's Motion for Summary Judgment (Doc. 919) is

**GRANTED**.

LaFromboise's Second Amended § 2255 Motion (Doc. 896) is

**DISMISSED**.

LaFromboise' § 2255 Motion (Doc. 831) is **DENIED AS MOOT**.

DATED this 20th day of June, 2023.


_____

Brian Morris, Chief District Judge
United States District Court